**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Franklin "Tex" Appledoorn and Pauline Appledoorn, ) ) ) Plaintiffs, ) ) vs. ) ) United States of America, ) ) Defendant. ) | **ORDER** Case No. 1:10-cv-044 |

_____

Before the Court is the Plaintiffs' Motion for Summary Judgment filed on October 22, 2010. See Docket No. 10. The Government filed a response in opposition to the motion on January 31, 2011. See Docket No. 21. Before the Court is also the Government's Motion to Dismiss filed on January 31, 2011. See Docket No. 19. The Plaintiffs filed a response in opposition to the motion on February 10, 2011. See Docket No. 22. The Government filed a reply brief on February 25, 2011. See Docket No. 24. For the reasons explained below, the Court grants the Government's motion to dismiss, denies the Plaintiffs' motion for summary judgment as moot, and dismisses the Plaintiffs' complaint with prejudice.

**I.      BACKGROUND**

On May 17, 1939, the Federal Farm Mortgage Corporation ("FFMC") acquired a parcel of land in Dunn County, North Dakota through a sheriff's sale. The land has the following description:

> North Half of Southeast Quarter (N½SE¼): also South Half
> of Northeast Quarter (S½NE¼), all in Section Twenty-two (22), Township One
> Hundred Forty-three (143) North, Range Ninety-four (94) West.

See Docket No. 11-1. The sheriff's deed was recorded on February 29, 1940. On October 1, 1940, Dunn County acquired the same parcel of land through a tax foreclosure. See Docket No. 11-2. The tax foreclosure resulted from unpaid taxes for the year 1934. The auditor's tax deed was recorded on December 10, 1940.

On August 21, 1941, the FFMC issued a quitclaim deed to R. R. Eberhard. See Docket No. 11-4, p. 19. The FFMC retained a fifty percent mineral interest. The quitclaim deed from the FFMC was recorded on September 4, 1941, at 2:25 p.m. On September 2, 1941, Dunn County also issued a quitclaim deed to Eberhard. See Docket No. 11-3. The quitclaim deed from Dunn County was recorded five minutes earlier than the FFMC deed, at 2:20 p.m. on September 4, 1941. See Docket No. 11-4, p. 18. On August 23, 1944, Eberhard and his wife conveyed the land to John Kuntz via a warranty deed. See Docket No. 11-4, p. 20. The warranty deed was recorded on December 21, 1950.

On September 6, 1957, the FFMC conveyed its mineral interest in the property to the United States of America, to be administered by the Secretary of the Interior. See Docket No. 20-1. The mineral quitclaim deed was recorded on November 5, 1957. See Docket No. 11-4, p. 23.

On April 6, 1993, John and Helen Kuntz conveyed the land to the plaintiffs, Franklin and Pauline Appledoorn, via a warranty deed, which was recorded on the same day it was signed. See Docket No. 11-4, p. 32. The Appledoorns' deed states that they receive the following property:

> Township 143 North, Range 94 West, 5th P.M.
> Section 14:   S½S½
> Section 22:   S½NE¼, NE¼NE¼, SE¼
> Section 23:   ALL
>
> Subject to all easements, exceptions, reservations and mineral conveyances of record; and

>That included within this conveyance are all mineral interests of the parties of the first part of which they are presently seized.

See Docket No. 11-4, p. 32.

Both the Government and the Appledoorns leased their mineral interests. On February 22, 1994, the Appledoorns leased their mineral interest to Sundance Oil & Gas, Inc. See Docket No. 20-2. The Government leased its fifty percent mineral interest to Sundance Oil & Gas, Inc. on August 25, 1994. See Docket No. 20-3. Franklin Appledoorn testified in a deposition that ever since he and his wife leased their mineral interests, they have always been paid as though they own half of the minerals. See Docket No. 20-4, p. 40-41.

Franklin Appledoorn testified that "a few years" after the Appledoorns received the property in 1993, he "thought it would be worthwhile checking into it, see who owns the minerals in . . . the parcels that we had." See Docket No. 20-4, p. 9. Franklin Appledoorn had a lawyer and two landmen review the abstract of title for Appledoorns' land. They were all of the opinion that the Appledoorns own the minerals in full. The Appledoorns contend in their memorandum in support of their motion for summary judgment that they "were unaware of any claim by the United States until August of 2008, when the existence of a dispute became apparent as the result of a title opinion prepared by the Bureau of Land Management." See Docket No. 11. The title opinion states, "Our title records reflect that the Federal Farm Mortgage Corporation transferred a 50 percent mineral interest in the above lands to the United States." See Docket No. 11-5.

On June 2, 2010, the Appledoorns filed a complaint to quiet title to the property. See Docket No. 1. The Appledoorns filed a motion for summary judgment on October 22, 2010. See Docket No. 10. The Appledoorns contend that the tax deed issued to Dunn County supersedes the sheriff's deed issued to the FFMC, such that the Government's fifty percent mineral interest is invalid. On

3

January 31, 2011, the Government filed a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, contending that the Appledoorns' claim is barred by the statute of limitations.  See Docket No. 19

## II.    STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a claim can be dismissed if the Court lacks subject matter jurisdiction.  It is well-established that "a district court 'has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1).'"  Harris v. P.A.M. Transp., Inc., 339 F.3d 635, 637 n.4 (8th Cir. 2003) (quoting Osborn v. United States, 918 F.2d 724, 728 n.4 (8th Cir. 1990)).  Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide.  Osborn, 918 F.2d at 729.

When considering a motion to dismiss under Rule 12(b)(1), the Court must distinguish between a "facial attack" and a "factual attack."  Id.  A facial attack restricts the Court to review the face of the pleadings to determine whether the plaintiff has alleged a basis of subject matter jurisdiction.  Id.  However, a factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980).

The Government seeks dismissal under Rule 12(b)(1) based on the Court's lack of subject matter jurisdiction because it contends the statute of limitations has run.  Because the motion at issue is a factual 12(b)(1) motion, "no presumptive truthfulness attaches" to the Plaintiffs' allegations.  Osborn, 918 F.2d at 730.  Further, the Plaintiffs bear the burden of proof that jurisdiction does in fact

exist. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000) (citing Nucor Corp. v. Neb. Pub. Power Dist., 891 F.2d 1343, 1346 (8th Cir. 1989)).

### III.    LEGAL DISCUSSION

"The United States is immune from suit unless it consents." Hart v. United States, 630 F.3d 1085, 1088 (8th Cir. 2011) (quoting Riley v. United States, 486 F.3d 1030, 1032 (8th Cir. 2007)). The Quiet Title Act of 1972 is a limited waiver of the Government's sovereign immunity. Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 737 (8th Cir. 2001) (citing 29 U.S.C. § 2409a(a)). The Quiet Title Act provides, in part:

> (a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights . . . .
>
> . . .
>
> (g) Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

29 U.S.C. § 2409a(a) and (g) (emphasis added). "Because the QTA waives the government's sovereign immunity from suit . . . a plaintiff must comply with the limitations period to effectuate that waiver. Hence the QTA statute of limitations acts as a jurisdictional bar unlike most statutes of limitations, which are affirmative defenses." Spirit Lake Tribe, 262 F.3d at 737-38 (internal citations omitted).

The Eighth Circuit described the operation of the Quiet Title Act's statute of limitations in Spirit Lake Tribe:

5

> The 12-year limitations period begins when a plaintiff knows or should know of the government's adverse land claim. 2[9] U.S.C. § 2409a(g). This standard does not require the government to provide explicit notice of its claim. The government's claim need not be "clear and unambiguous." [State of N.D. ex rel. Bd. of Univ. & Sch. Lands v. Block, 789 F.2d 1308, 1313 (8th Cir. 1986).] "Knowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." Id. (quoting Knapp v. United States, 636 F.2d 279, 283 (10th Cir. 1980)).
>
> Further, the government's interest "need not amount to full legal title . . . . As long as the interest claimed is a 'cloud on title,' or a reasonable claim with a substantial basis, it constitutes a 'claim' for purposes of triggering the twelve-year statute of limitations." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 769 (4th Cir. 1991). Even invalid government claims trigger the QTA limitations period. See id. Simply put, the limitations period is triggered when a landowner has reason to know that the government claims some type of adverse interest in that land. See Patterson v. Buffalo Nat'l River, 76 F.3d 221, 224 (8th Cir. 1996).

Id. at 738.

The Government contends that the Court does not have subject matter jurisdiction because the twelve-year statute of limitations has run. The Government asserts that five events gave, or should have given, the Appledoorns or their predecessors in interest notice of the Government's mineral interest: (1) the FFMC's 1941 quitclaim deed to R. R. Eberhard, reserving a fifty percent mineral interest; (2) between 1950-57 written notice from the FFMC to surface landowners of the mineral interest held by the FFMC and the option to purchase that interest; (3) the 1957 quitclaim deed from the FFMC to the United States; (4) the Appledoorns' acquisition of an abstract of title in 1993; and (5) the Government's 1994 oil and gas lease to Sundance Oil & Gas, Inc. See Docket No. 20. All of these events took place more than twelve years before the Appledoorns filed their complaint on June 2, 2010. See Docket No. 1.

The Appledoorns contend that the Government's mineral interest is outside the chain of title, and therefore does not trigger the Quiet Title Act's statute of limitations. The Appledoorns argue,

6

in essence, that the Government's mineral interest cannot trigger the Quiet Title Act's statute of limitations because it is invalid and the Appledoorns own the minerals in full. However, as the Eighth Circuit has explained, "Even invalid government claims trigger the QTA limitations period." Spirit Lake Tribe, 262 F.3d at 738 (citing Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 769). The validity of the Government's claim is irrelevant. The critical and relevant question is when the Appledoorns or their predecessors in interest knew or should have known of the Government's claim to fifty percent of the mineral interests.

While there is clear evidence that the Appledoorns' predecessors in interest, the Eberhards and the Kuntzes, knew or should have known of the Government's fifty percent interest in the minerals back in the 1940's and 1950's, the Court will limit its discussion to when the Appledoorns knew or should have known of the Government's ownership interest. The Government contends that the Appledoorns knew or should have known of the Government's interest either in 1993 when they received the abstract of title for the property, or in 1994 when the Government leased its one-half interest in the minerals to Sundance Oil & Gas, Inc.

Franklin Appledoorn testified in his deposition as to when he became aware of the Government's mineral interest:

> When we bought the place, we bought it on a 20-year contract, and once we got the abstracts, I – well, I didn't really look them over right away, then a few years later I got to thinking, Well, I should have everything checked out in the abstract as far as minerals. And, as a matter of fact, I had three different people do it, and they had done a lot of it, and they were all under the assumption that them minerals should have went – that the U.S. Government has that should have went with the land because, if I remember right, it was taken for taxes or something.

See Docket No. 20-4, p. 7. Franklin Appledoorn testified further:

Q.  . . . So you bought it on a contract for deed and then – that was 1973?

7

      A.      Right.

      Q.      Twenty years later, 1993, you had that paid off?

      A.      Right.

      Q.      So at that point you received a full warranty deed, is that right?

      A.      Right.

      Q.      Was it at that point that you became more motivated to check out who really owns the minerals?

      A.      Well, not right away. I never thought about it right away. A few years later after that I thought it would be worthwhile checking into it, see who owns the minerals in, you know, the parcels that we had.

      Q.      You said you had some people – hired some people to look at it. Do you recall who?

      A.      Al Tamayo and Dave Stenehjem and Ross Sundeen.

<u>See</u> Docket No. 20-4, pp. 8-9. The Government's attorney sought clarification:

      Q.      So do you recall about when this would have been that you went to Al Tamayo and Dave Stenhjem and Ross Sundeen?

      A.      I'm not exactly sure. It was different times. Al Tamayo was the first one and then Dave – well, I don't know if Ross or – anyway, I can't remember exactly.

      Q.      Sometime after 1993?

      A.      Yeah. Oh, yeah.

      Q.      Would it have been like within two, three, four years, or what do you think?

      A.      After '93, you mean?

      Q.      Right.

      A.      Oh, yeah, maybe three to five years, I'm guessing. I'm not exact on that.

See Docket No. 20-4, pp. 12-13. Franklin Appledoorn testified that when he and his wife leased their mineral interests, they were always paid as if they owned a fifty percent interest. See Docket No. 20-4, p. 41.

On February 10, 2011, Franklin Appledoorn filed an affidavit clarifying his deposition testimony:

> At pages 25 and 26, when I was answering questions related to when I talked to Stenehjem, Sundeen, and Tamayo about the minerals, I stated my conversations with them about the minerals occurred 3-5 years after purchasing the land. I mis-spoke. These conversations occurred 3-5 years after the last lease on the land.

See Docket No. 22-1. However, Franklin Appledoorn testified multiple times during his deposition that he decided to review the abstract of title "a few years" or "three to five" years after receiving the warranty deed in 1993. See Docket No. 20-4, pp. 7-9, 12-13. In addition, when the Appledoorns received the warranty deed in 1993 they were put on constructive notice of the previously-recorded deeds, including the FFMC's quitclaim deed to R. R. Eberhard reserving a fifty percent mineral interest, and the FFMC's quitclaim deed transferring that mineral interest to the United States. See Docket No. 11-4, pp. 19, 23. Regardless of whether the Government's claim to a fifty percent mineral interest is valid, the Court finds that the Appledoorns should have known of the Government's claim in 1993 when they received the deed to the property.

The Court further finds that the Appledoorns should have known of the Government's fifty percent mineral interest in 1994. On February 22, 1994, the Appledoorns leased their mineral interests to Sundance Oil & Gas, Inc. See Docket No. 20-2. On August 25, 1994, the Government also leased their mineral interests to Sundance Oil & Gas, Inc. See Docket No. 20-3. Both leases were recorded. Franklin Appledoorn testified that he and his wife were always paid as though they owned a fifty percent mineral interest. See Docket No. 20-4, p. 41. The recording of the

9

Government's lease, and the manner in which the Appledoorns were paid for their share of the mineral interest, should have put the Appledoorns on notice of the Government's claim to a fifty percent mineral interest.

The Appledoorns bear the burden of proving that this Court has jurisdiction. V S Ltd. P'ship, 235 F.3d at 1112 (citing Nucor Corp., 891 F.2d at 1346). The Court finds that the Appledoorns should have known of the Government's mineral interest in the property in 1993 or 1994. They did not file their complaint until 2010. The record reveals that their predecessors in interest (the Eberhards and the Kuntzes) clearly knew or should have known of the Government's fifty percent ownership interest in the minerals back in the 1940's and 1950's. The Quiet Title Act's twelve-year statute of limitations divests this Court of jurisdiction. The Court does not have jurisdiction to hear the Appledoorns' claim or decide their motion for summary judgment.

### IV.    CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. The Court **GRANTS** the Government's Motion to Dismiss (Docket No. 19), **FINDS AS MOOT** the Plaintiffs' Motion for Summary Judgment (Docket No. 10), and **DISMISSES** the Plaintiffs' complaint with prejudice.

**IT IS SO ORDERED.**

Dated this 29th day of April, 2011.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court